McCARTHY, APPELLANT, v. STATE BANK OF TOWNSEND
ET AL., RESPONDENTS.

(No. 3,841.)

STATE BANK OF TOWNSEND, RESPONDENT, v. McCARTHY,
APPELLANT.

(No. 3,846.)

(Submitted December 7, 1917.   Decided January 7, 1918.)

[170 Pac. 15.]

*Real Property—Mortgages—Foreclosure Sale—Rights of Purchaser—Void Decree — Subrogation — Action for Reimbursement—Caveat Emptor—Laches—Mistake.*

Foreclosure of Mortgage—Judicial Sale—Rights of Purchaser—Subrogation.
   1. A purchaser at a judicial sale submits himself to the jurisdiction of the court and may, on proper occasion, be subrogated to

whatever rights and remedies exist in favor of the judgment creditor whose claim has been satisfied by the proceeds of the sale.

Same—Subrogation—When not Applicable.

2.  Subrogation may be asserted or waived by the party entitled to its benefit, but is not intended to be applied in all cases, as where it would be of no advantage, where justice does not demand its application, where it would prejudice the rights of innocent parties, where its effect would be to compel the acceptance of a doubtful or inadequate remedy for one which would be more certain or adequate.

[As to the right of subrogation, see note in 99 **Am. St. Rep.** 474.]

Same—Subrogation—Rights of Subrogee.

3.  A subrogee cannot, as such, acquire any other or greater rights than those possessed by the party whom he disposes.

Same—Void Decree—Rights of Purchaser—Action for Reimbursement.

4.  A purchaser of lands at a foreclosure sale under a decree which, unknown to him but known to the judgment creditor, was void because of nonservice of summons on some of the defendants, may, under section 6844, Revised Codes, as well as in the absence of statute, by independent action recover reimbursement from the judgment creditor, subrogation not offering any remedy.

Same—*Caveat Emptor*—When Doctrine Inapplicable.

5.  Where a purchaser at a foreclosure sale before bidding had consulted the decree and found a recital therein that summons had been duly served upon all defendants and in reliance thereon bought and paid for the property, he was not prevented by the doctrine of *caveat emptor* from seeking reimbursement from the judgment creditor when the decree was set aside as void for failure of service of summons upon all parties interested.

Same—Laches—Mistake of Law.

6.  Failure to ascertain accurately from court records that a decree in a foreclosure suit was void because of insufficient service of summons, the decree itself reciting that summons had been properly served upon all parties defendant, *held* not to have been such culpable negligence as to bar the purchaser from relief upon the ground of mistake.

*Appeal from District Court, Broadwater County; John A. Matthews, Judge.*

ACTIONS by T. J. McCarthy against the State Bank of Townsend and others (No. 3,841), and by the State Bank of Townsend against Gavin W. Hamilton, T. J. McCarthy and others (No. 3,846). T. J. McCarthy appeals from the judgment in the first cause, and from an order of dismissal of a petition after demurrer sustained, made in the second. The appeals were consolidated. Judgment in cause No. 3,841 reversed, and order in No. 3,846 affirmed.

*Messrs. Walsh, Nolan & Scallon,* for Appellant, submitted a brief in behalf of Appellant, as well as one in reply to that of Respondents; *Mr. C. B. Nolan* argued the cause orally.

Under *Hamilton* v. *Hamilton,* 51 Mont. 509, 154 Pac. 717, we are entitled to recover our money from the bank, by virtue of section 6844, Revised Codes. However, independent of the statute, the right exists to recover the purchase money from the creditor. See *Henderson* v. *Overton,* 2 Yerg. (Tenn.) 394, 24 Am. Dec. 493, also, *Hoxter* v. *Poppleton,* 9 Or. 481, holding the purchaser entitled to recover the consideration where an execution was issued without judgment. (*Chapman* v. *City of Brooklyn,* 40 N. Y. 372; *Schwinger* v. *Hickok,* 53 N. Y. 280, 282.)

It is insisted, however, that the doctrine of *caveat emptor* applies to our prejudice. While the doctrine applies to judicial sales, it does not apply to the defects which in this case confront us. (Sec. 5117, Rev. Codes.) In every judicial sale there is an implied warranty that the proceedings have been so regularly conducted as to carry the title of the defendant's interest, and that the proper persons have been made parties, and unless this is fulfilled, the purchaser is under no obligation to fulfill his purchase. (Note, 26 Am. Rep. 39.) As where a judgment creditor is not made a party to a foreclosure (*Verdin* v. *Slocum,* 71 N. Y. 345); or summons has not been properly served. (*Smith* v. *Wells,* 69 N. Y. 600.)

The maxim of *caveat emptor* applies where there is a want of ownership in the property by the defendant, but it does not apply to the defects in the title of the purchaser occasioned by the failure of the sale to pass the title. (*Bond* v. *Montgomery,* 56 Ark. 563, 35 Am. St. Rep. 120, 20 S. W. 525; *Meher* v. *Cole,* 50 Ark. 361, 7 Am. St. Rep. 101, 7 S. W. 451; *Scott* v. *Dunn,* 21 N. C. 425, 30 Am. Dec. 174; *Valle's Heirs* v. *Fleming's Heirs,* 29 Mo. 152, 77 Am. Dec. 557; *Crippen* v. *Chappel,* 35 Kan. 495, 57 Am. Rep. 187; Freeman on Void Judicial Sales, secs. 51, 54.)

In *Forst* v. *Davis,* 101 Ky. 343, 41 S. W. 27, where a commissioner's deed was invalid, the purchaser was entitled to get his

money back. In *Hall* v. *Dineen,* 26 Ky. Law Rep. 1017, 83 S. W. 121, it was held that upon a rescission of the contract the parties should be placed in the positions in which they were before the sale. In *Succession of Dumestre,* 40 La. 571, 4 South. 328, money in the hands of a commissioner was ordered returned upon discovery of a defective title. In *Macmanus* v. *Orkney* (Tex. Civ.), 39 S. W. 614, an administrator's sale was void for uncertainty, and the purchaser, whose money canceled the indebtedness belonging to the estate, was adjudged entitled to a lien on all of the lands of the deceased for the return of the purchase price. In *Virginia-Carolina Chem. Co.* v. *McLucas,* 87 S. C. 350, 69 S. E. 670, it was held that the purchaser at a sale should not be compelled to comply with his bid when the title proved defective. (See, also, *Dresser* v. *Kromberg,* 108 Me. 423, Ann. Cas. 1913B, 542, 36 L. R. A. (n. s.) 1218, 81 Atl. 487; *Pease* v. *Bamford,* 96 Me. 23, 51 Atl. 234.)

*Messrs. Purcell & Horsky,* for Respondent Bank, submitted a brief; *Mr. Antone J. Horsky* argued the cause orally.

A purchaser at a foreclosure sale submits himself to the jurisdiction of the court in the foreclosure suit, becomes a party to it, and for any irregularity in that suit his remedy is by motion in such suit and not by independent action. (*Boggs* v. *Fowler,* 16 Cal. 560, 76 Am. Dec. 561.) A purchaser at a mortgage foreclosure sale steps into the shoes of the plaintiff in such action, is subrogated to his rights; in effect he becomes an assignee of the mortgage and notes, and subjects himself to the jurisdiction of the court in that action, and he has an ample, adequate and speedy remedy for all his legal rights in that action. This being so, whatever relief the purchaser at such sale is entitled to must be sought in that action; he cannot maintain an independent, equitable action, such as the instant one, for relief, nor is his remedy against the plaintiff in the foreclosure action, but against the mortgagors and the mortgaged property. (*Burton* v. *Lies,* 21 Cal. 87; *Johnson* v. *Robertson,* 34 Md. 165; *Cook* v. *Toumbs,* 36 Miss. 685; *Hudgin* v. *Hudgin's Exr.,* 6 Gratt. (Va.)

320, 52 Am. Dec. 124; *Robinson* v. *Ryan,* 25 N. Y. 320; *Grapengether* v. *Fejervary,* 9 Iowa, 162, 74 Am. Dec. 336; *Honaker* v. *Shough,* 55 Mo. 472; *Stoney* v. *Shultz,* 1 Hill Eq. (S. C.) 465, 27 Am. Dec. 429; *Tutwiler* v. *Atkins,* 106 Ala. 194, 17 South. 394; *Moore* v. *Cord,* 14 Wis. 213; *King* v. *Brown,* 80 Tex. 276, 16 S. W. 39; *Dutcher* v. *Hobby,* 86 Ga. 198, 22 Am. St. Rep. 444, 10 L. R. A. 473, 12 S. E. 356; 2 Jones on Mortgages, 6th ed., sec. 1678.)

Appellant is basing his supposed right of recovery upon Revised Codes, section 6844, which is section 708 of the California Code of Civil Procedure, but in this he is manifestly mistaken. The relief provided for by that section of the codes is, by its express terms, limited to sales had upon execution. But the sale attacked in the present case was one upon order of the court, in an equitable foreclosure suit, and the distinction between the two is self-evident.   It is shown in *Thomas* v. *Thomas,* 44 Mont. 102, Ann. Cas. 1913B, 616, 119 Pac. 283. For further cases pointing out the distinction between sales had upon execution and judicial sales, see *Norton* v. *Reardon,* 67 Kan. 302, 100 Am. St. Rep. 459, 72 Pac. 861; *Southern California Lumber Co.* v. *Ocean Beach Hotel Co.,* 94 Cal. 217, 28 Am. St. Rep. 115, 118, 29 Pac. 627; *Dawson* v. *Litsey,* 10 Bush (73 Ky.), 408; *Hershy* v. *Latham,* 42 Ark. 305; *Preston* v. *Breckinridge,* 86 Ky. 619, 6 S. W. 641.

How can the appellant claim that he did not know that the Hamiltons had not been served with process? An examination of the records would have disclosed this immediately.   He did not make such examination, and is therefore guilty of negligence, and must suffer the consequences of his own act and inattention to his interests.   (*Trapier* v. *Waldo,* 16 S. C. 276; *Boorum* v. *Tucker,* 51 N. J. Eq. 135, 26 Atl. 456; *Williamson* v. *Jones,* 43 W. Va. 562, 64 Am. St. Rep. 891, 38 L. R. A. 694, 27 S. E. 411.)

*Mr. Frank A. Roberts,* for Respondent Robert J. Gleason, submitted a brief.

MR. JUSTICE SANNER delivered the opinion of the court.

These appeals (consolidated Nos. 3,841 and 3,846) seek to present, upon the same facts but in different proceedings, the ultimate question what, if any, relief the appellant should have.

The postulated facts are: Gavin W. Hamilton, Mollie G. Hamilton and Robert J. Gleason were mortgagors to the State Bank of Townsend of certain real property in which Gleason owned an undivided one-half interest and the Hamiltons a like estate. On April 16, 1913, the obligations secured by the mortgages were past due, and the Townsend bank brought suit to foreclose, naming the Hamiltons, Gleason and the First National Bank of Missoula (the last upon allegations of adverse claim) as defendants. Summons was issued, and the return shows service upon the Missoula bank on April 22; that the other defendants could not be found, and that copies had been sent them by registered mail—registry return receipts from Tucker, Utah, being attached, each dated April 25, 1913, and signed by R. M. Hamilton as "addressee's agent." Thereafter the Townsend bank caused an *alias* summons to issue, the return whereof shows personal service upon Gleason on May 21. None of the defendants appeared, and on September 6, 1913, the default of all of them was entered and indorsed upon the complaint. Ten days later a judgment was entered decreeing the foreclosure of the mortgages, and directing the sale of the mortgaged property, which judgment contained the recital that it had been made to appear to the satisfaction of the court "that the summons in said action, together with a copy of the complaint therein, has been duly served upon said defendants and each of them, and that all of said defendants have been duly and regularly summoned to appear and answer." Pursuant to such decree and an order of sale issued thereunder, the sheriff, after due notice, put up the property at public auction and sold it to T. J. McCarthy for $13,475—a sum sufficient to meet the face of the judgment, with attorney's fees, costs and accruing costs, and to leave a balance of $9.45 in the hands of the sheriff—of all of which due return was made. A cer-

tificate of sale was issued to McCarthy, and a year later, no re-demption having occurred, a deed was delivered to him.   At all times during this period McCarthy was ignorant of any defect in the proceedings or of anything that would affect the validity of the judgment and sale; he believed that both were valid, and that by means of the sale he would acquire, and by the deed had acquired, all the right, title and interest of the Hamiltons as well as of Gleason in and to the property, otherwise he would not have bid for or purchased the same; and he was moved to such belief by the recitals of the judgment showing that the proceedings leading up to the same were regular and sufficient, which recitals had been inserted at the instance of the Townsend bank, with knowledge that the Hamiltons had not in fact been served with summons.   Gleason's interest in the property was not worth more than one-half of what McCarthy had paid, and McCarthy has been unable to obtain possession, being forcibly prevented and evicted by Gavin W. Hamilton.   Learning late in October, 1914, that the judgment and the sale thereunder were void as to the Hamiltons, McCarthy notified the Townsend bank of his rescission of the transaction, so far as rescission could be effected by him, offering to make any and all stipula-tions or instruments necessary to restore the parties to their *status quo ante,* which he still stands ready to do.   On Decem-ber 14, 1914, pursuant to a stipulation between the bank and the Hamiltons, an order of court was made and entered vacating said judgment as against the Hamiltons because the same is void.

These facts were set forth first in an amended complaint by McCarthy in an action against all the parties to the foreclosure, praying, among other things, that the judgment as against the Hamiltons and all the proceedings following the judgment in the foreclosure suit, including the sale, be annulled, that the Townsend bank repay to him the moneys paid by him for the property, together with interest and taxes, and that 'he have such other and further relief as may be just.   The two banks and Gleason each filed a general demurrer, and these demurrers

were sustained. McCarthy declined to plead further and suffered judgment of dismissal. The appeal in No. 3,841 is from that judgment.

The other appeal—No. 3,846—is from an order, entered after demurrer sustained, dismissing a petition by McCarthy in the original foreclosure suit. This petition shows the same averments as the amended complaint in No. 3,841, and alleges as the reason for not making earlier application to the district court that McCarthy had been advised he could maintain an independent action, which he had endeavored to do. The demurrer to it was by the Townsend bank, and assigned among its grounds another action pending seeking the same relief.

The allegations, thus doubly made, clearly assert that, because of defects in the foreclosure suit, procured by the Townsend bank and unknown to him, the appellant McCarthy did not get what he had made his bid and paid his money for. He therefore should, upon the plainest principles of equity, be entitled to adequate relief somewhere, unless barred by his own fault or by some principle of law peculiar to this situation. But while this is so, it must also be obvious to any one that both of these appeals cannot be sustained; for if the appellant was privileged to proceed outside the original foreclosure suit, his action was pending when the petition in the foreclosure suit was filed. Some contention is made that the latter proceeding was not an action so as to warrant the ground of ''another action pending,'' assigned in the demurrer to the petition. This, however, is a refinement which for present purposes may be regarded as negligible. The decisive question is whether the independent action was available; and this the Townsend bank denies upon the ground that McCarthy, as purchaser under the order of sale in the foreclosure suit, became subrogated to the rights of the bank, was thereby vested with an adequate remedy in that suit, and was obligated to pursue such remedy.

It undoubtedly is the rule that the purchaser at a judicial [1] sale submits himself *pro hac vice* to the jurisdiction of the court (*Boggs* v. *Fowler & Hargrave,* 16 Cal. 560, 76 Am. Dec.

561; *Andrews* v. *O'Mahoney*, 112 N. Y. 567, 20 N. E. 374), and may, on proper occasion, be subrogated to whatever rights and remedies exist in favor of the judgment creditor whose claim has been satisfied by the proceeds of the sale (Freeman on Void Judicial Sales, secs. 51 *et seq.;* note to *Cowper* v. *Weaver's Admr.*, 69 L. R. A. 33, 42). That the subrogation thus available, [2] however, cannot in all cases be imperative or exclusive is patent from the nature of the thing itself. Speaking generally, the doctrine is one of equity and benevolence; like contribution and other similar equitable remedies, it came from the civil law; its basis is the doing of justice, its object the prevention of injustice; it may be asserted or waived by the party entitled to its benefit, but is not intended to be applied in all cases without regard to circumstances, as where it would be of no advantage, where justice does not demand its application, where it would prejudice the rights of innocent parties, where its effect would be to compel the acceptance of a doubtful or inadequate remedy for one which might be more certain and adequate. (Sheldon on Subrogation, secs. 1, 4, 41; 37 Cyc. 363 *et seq.*)

The bearing of these general propositions will be plain enough [3] when it is recalled that a subrogee can never, as such, acquire any other or greater rights than those possessed by the party whom he displaces. Now, what are the rights of the Townsend bank to which the appellant, McCarthy, would thus succeed? They are, says the bank, "to perfect the proceedings in the foreclosure suit, and to foreclose all rights of the mortgagors therein in and to the mortgaged premises." But Gleason insists that this may not be done; that the judgment in the foreclosure suit being valid and final as to him, and all his interests in the property having been regularly sold to satisfy the same, the sale, so far at least, must stand; that, having paid his debt to the law, he is now an innocent party, and ought not to be harassed or endangered by further proceedings, begotten of circumstances for which he is no wise responsible—and this position seems to us impregnable. Yet, if it is, McCarthy's

right under subrogation would amount to nothing more than the privilege to proceed with the foreclosure as against the Hamiltons and to cause a public sale of their interest—winding up, not with what he had bought and paid for, to-wit, title to the whole of the premises, but more likely as cotenant with a stranger.  Again, how is McCarthy to proceed ''to foreclose all rights of the mortgagors in and to the mortgaged premises''? How is he to bring the Hamiltons, who have never been served with summons, into court?  By *alias* summons?  It is too late. (Rev. Codes, sec. 6516.)  By special summons under Code sections 7129 *et seq*?  This case cannot be brought within these provisions.  By petition and notice under section 6844?  So far as the Hamiltons are concerned, there is no judgment to revive. By such notice in the foreclosure suit as would be given a party thereto?  Hamilton is not a party, and no statutory provisions exist by which he can be made a party in any such fashion.  Indeed, the only way apparent to us by which jurisdiction of the Hamiltons' interest can be obtained is through another suit to foreclose the mortgage as to it, supported by service—and, needless to say, this, besides presenting its own difficulties, is not to proceed in the original suit but by independent action.  Clearly, then, subrogation does not offer to McCarthy any certain remedy, if any remedy at all in the original suit.

Moreover, the relief suggested as available through subrogation is altogether inadequate.  No result short of enabling McCarthy to get what he paid for, or reimbursement, could meet for a moment the demands of equity.  Under subrogation, reimbursement of course is out of the question; yet subrogation does not promise that McCarthy will be enabled to get what he paid for, and it cannot be applied so as to accomplish that result [4] without again involving Gleason.  It follows, therefore, that if McCarthy is entitled to any adequate relief, it must be outside of subrogation and by independent action for reimbursement.  That such an action does lie, without reference to statute, has been often decided (*Henderson* v. *Overton* 2 Yerg. (Tenn.) 394, 24 Am. Dec. 492; *Hoxter* v. *Poppleton,* 9 Or. 481; *Hall* v.

*Dineen,* 26 Ky. Law Rep. 1017, 83 S. W. 120; *Schwinger* v. *Hickok,* 53 N. Y. 282; 24 Cyc., par. B.; 17 Am. & Eng. Ency. of Law, 1024; note to *Cowper* v. *Weaver's Admr.,* 69 L. R. A. 56); when brought, it necessarily implies that subrogation has been waived, and it proceeds against the only party from whom reimbursement can come, *viz.,* the judgment creditor who caused the sale and received the results thereof.

We by no means venture to assert that declarations may not be found the effect of which is to declare the compulsory and exclusive theory of subrogation in cases of this kind; but we deem it noticeable that many of the authorities cited to support that view contain a recognition to the contrary, express or implied. (See *Ketchum* v. *Crippen,* 37 Cal. 223; *Boggs* v. *Fowler & Hargrave, supra;* Freeman on Executions, sec. 352; Freeman on Void Judicial Sales, sec. 49; 3 Jones on Mortgages, secs. 1678–1681.) The matter has, however, been settled by the explicit provisions of our statute (Rev. Codes, sec. 6844). In terms this section is addressed to sales under execution, but the reasoning in *Hamilton* v. *Hamilton,* 51 Mont. 509, 154 Pac. 717, and other cases (*Harlan* v. *Smith,* 6 Cal. 173; *Stout* v. *Macy,* 22 Cal. 647) commands its application to sales under foreclosure. Here we have a sale void as to the Hamilton interest for want of valid authority—which presents a case of "irregularity in the proceedings concerning the sale," so as to bring the statute to bear (*Elling* v. *Harrington,* 17 Mont. 322, 42 Pac. 851; *Merguire* v. *O'Donnell,* 139 Cal. 6, 96 Am. St. Rep. 91, 72 Pac. 337), while the constructive eviction necessary to authorize recourse against the judgment creditor is sufficiently alleged (*Elling* v. *Harrington, supra*).

The bank insists, however, that the maxim *"caveat emptor"* [5] prevents McCarthy from seeking reimbursement. This might be correct from the point of view of Gleason, who, as we have seen, must be regarded as out of the case, or of the Hamiltons, who were never in it. But, according to our Code (sec. 5117), there is an implied warranty that the seller does not know the sale will not pass good title to the property, and no

such warranty can coexist with *caveat emptor* as the respondents apply it. Nor has such application the support of general authority. If, at a judicial sale, which never in contemplation of law offers more than the judgment debtor's interest in the property sold, the purchaser gets all that was offered, though it be less than he supposed, *caveat emptor* prevents him making complaint of that; but it is not and should not be the rule that he cannot complain of the judgment creditor if, because of defects in the proceedings for which the latter is responsible, he did not get even what was offered. (*Henderson* v. *Overton, supra; Bond* v. *Montgomery,* 56 Ark. 563, 35 Am. St. Rep. 120, 20 S. W. 525.) Particularly is this true in cases where the purchaser has referred to and relied on the solemn assurances of the judgment that everything was as it should be—unless the law, instead of furthering its declared policy to encourage bidding, would bait a trap with exactions beyond the power of the average laymen to meet. The Supreme Court of New York has well said—and the declaration has had the approval of this court (*Elling* v. *Harrington, supra*) : "It is doubtless true that a person claiming a right or title under a conveyance or an instrument, in execution of a power, is in general chargeable with notice of any infirmity in his title disclosed by the instrument under which he claims, or of which, by reasonable diligence, he would have become acquainted. * * * The rule is adopted to determine the question of superior equities, and to protect innocent persons from being defrauded. * * * This principle is invoked in this case to debar a plaintiff who has paid his money in good faith, without actual knowledge, on a purchase under a void execution, from recovering it back of the persons to whom it was paid, and who were the plaintiffs in and procured the sale under the execution, and who, at the time of the sale, knew that the purchaser would acquire no title to the property. The principle referred to has no proper application to this case. To make out a voluntary payment, knowledge that the execution was void is imputed to the purchaser, although there was none in fact, and this for the benefit of persons having

actual knowledge, and who took the plaintiff's money. The language of Lord Mansfield in *Moses* v. *Macfarlane* (2 Burr. 1009) is applicable. In speaking of the equitable action for money had and received, he says: 'It lies for money paid by mistake, or upon a consideration which happens to fail, or for money got through imposition, or extortion, or oppression, or an undue advantage taken of a party's situation contrary to laws made for the protection of persons under these circumstances.' '' (*Schwinger* v. *Hickok, supra.*)

Neither can it be conceded that failure to ascertain the true state of the record in the foreclosure proceedings was necessarily **[6]** such culpable negligence as to bar McCarthy from relief upon the ground of mistake. The argument is that the means of knowledge were at his command; all he had to do was to go behind the judgment, consult the judgment-roll, and accurately determine therefrom whether the judgment as to the Hamiltons was valid or void; and the underlying theory is that the mistake is one of law, from which relief cannot be had, because every one is presumed to know the law. That such is not the rule in this state has been declared in several decisions, among them *Brundy* v. *Canby,* 50 Mont. 454, 148 Pac. 315, wherein certain remarks, quite pertinent here but too extended for quotation, will be found (50 Mont.) at pages 471–473.

Our conclusion, then, is that McCarthy was entitled to subrogation if he wanted it; but he could waive it, and proceed by independent action to secure reimbursement of the bank. In other words, he had an election of remedies, and he exercised that election—wisely, we think—when he filed his complaint in No. 3,841. Having chosen, he could not thereafter proceed nor contemporaneously maintain his petition in the foreclosure suit; hence the demurrer to that petition was properly sustained. His complaint in the independent action, however, was sufficient to authorize recovery from the Townsend bank, although no cause of action was or could be stated as to Gleason or the Missoula bank.

The order appealed from in No. 3,846 is therefore affirmed; but the judgment in No. 3,841 is reversed so far as the Townsend bank is concerned, and the cause is remanded, with directions to overrule the demurrer of the Townsend bank. The costs of these appeals will be divided equally between that respondent and the appellant, McCarthy.

MR. JUSTICE HOLLOWAY concurs.

MR. CHIEF JUSTICE BRANTLY, being absent, takes no part in the foregoing decision.